*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re PEDRICK, Minors.

UNPUBLISHED
November 12, 2019

No. 348748
Oakland Circuit Court
Family Division
LC No. 2017-855978-NA

Before: M. J. KELLY, P.J., and FORT HOOD and SWARTZLE, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating her parental rights to her four children under MCL 712A.19b(3)(c)(*i*), (g), and (j). Because we find no error requiring reversal, we affirm.

## I. BACKGROUND

The Department of Health and Human Services (DHHS) filed a petition in this case after receiving a complaint regarding physical neglect of the children, truancy, and concerns about respondent's mental health. Respondent had kept the children out of school for extended amounts of time—about 90 days of the school year—and she did not care for their hygienic needs. Respondent also displayed overt symptoms of severe mental illness. Further, she and the children were living with respondent's father, who had two convictions for domestic violence against respondent.

At a bench trial on adjudication, the children's pediatrician testified that she was not aware of any medical conditions that would necessitate the children's extended absences from school. The dean of students for the children's school testified that she and a truancy officer had met with respondent about the children's absences and hygiene, but those issues did not improve. Respondent denied having any issues with mental health. But the caseworker noted that respondent demonstrated overt symptoms of mental illness, such as claiming that the FBI and other governmental agencies were investigating her. Respondent's father admitted to the domestic-violence convictions. After the close of proofs, the trial court found that jurisdiction had been established.

-1-

The trial court provided respondent with a treatment plan that required her to participate in mental health services, parenting classes, and individual therapy, and obtain adequate employment and appropriate housing. She began seeing a therapist, but the therapist opined that respondent did not benefit from therapy because she did not accept responsibility for the children's removal, and she claimed that she had legitimate reasons for keeping the children out of school. Respondent also saw a psychiatrist who diagnosed her with adjustment disorder with mixed emotions and conduct, paranoid delusional thinking with depressive and anxiety symptoms, schizoaffective disorder, paranoid-delusional disorder, and grandiose thoughts. Respondent also experienced hallucinatory phenomenon during her sessions with the psychiatrist. The psychiatrist prescribed medication, but respondent claimed that she did not need it, and she refused to take it.

The caseworker and a parenting partner attempted to help respondent secure Section 8 housing, but respondent refused. Respondent eventually secured employment that paid $10 per hour, which the caseworker opined was insufficient to support a family of five.

The trial court suspended respondent's parenting time in December 2017 because she was having inappropriate conversations with the children, which was causing them emotional distress. For example, she spoke about a person chasing her with an axe and UFOs.

The trial court found that statutory grounds for termination had been established by clear and convincing evidence and that termination of respondent's parental rights was in the children's best interests.

This appeal followed.

II. ANALYSIS

A. STATUTORY GROUNDS FOR TERMINATION

Respondent first argues that the trial court clear erred when it found that petitioner had established the statutory grounds for termination by clear and convincing evidence. We conclude that the trial court properly found statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*).

In order to terminate parental rights, the trial court must find that at least one of the statutory grounds for termination has been met by clear and convincing evidence. *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). We review the trial court's determination for clear error. *Id.* "A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009). We give "deference to the trial court's special opportunity to judge the credibility of the witnesses." *Id.*

The trial court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g) and (j). Subsection (c)(*i*) states:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

Respondent does not contest the facts that she was a respondent in a child-protective proceeding and that 182 days had passed since the trial court issued a dispositional order. Indeed, both of those elements are clearly met. Instead, respondent argues that petitioner failed to prove that the issues that led to adjudication continued to exist and that she would not be able to rectify those conditions within a reasonable time.

The issues that led to adjudication included respondent's inappropriate housing, her untreated mental-health issues, the fact that she was keeping the children out of school, and her neglect of the children's hygiene needs. Once the children were placed in foster care, the last two issues were resolved. Yet, respondent continued to believe that the children's extended absences from school were necessary because of their medical needs, despite the lack of medical support for that belief. Regarding housing, respondent was living with her family members; when the children were with her, seven people were living in a three-bedroom house. Regarding her mental health issues, respondent had multiple diagnoses. She consistently claimed that she did not have mental health issues, and she refused to take the medication that would have helped treat her severe issues. Although she did participate in individual therapy, the therapist testified that respondent did not benefit from the therapy. There was no indication that respondent had made progress in treating her mental health issues. Given all of this evidence, we are not "left with a definite and firm conviction that a mistake has been made" in the trial court's finding that MCL 712A.19b(3)(c)(*i*) was proven by clear and convincing evidence. *In re HRC*, 286 Mich App at 459.

Only one statutory ground need be proven in order to terminate parental rights. *In re Frey*, 297 Mich App 242, 244; 824 NW2d 569 (2012). Because we find that subsection (c)(*i*) was established, we decline to address the remaining statutory grounds.

## B. BEST-INTERESTS FACTORS

Respondent next argues that the trial court clearly erred in finding that termination was in the best interests of the children. We disagree.

Once a statutory ground for termination has been established, the trial court must find that termination of parental rights is in the child's best interests before it can terminate parental rights. MCL 712A.19b(5); *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). Whether termination of parental rights is in the child's best interests must be proven by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). We

review for clear error a trial court's finding that termination of parental rights is in a child's best interests. *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009). "[T]he trial court has a duty to decide the best interests of each child individually." *In re Olive/Metts*, 297 Mich App at 42. The trial court must only address each child's best interests individually, however, when their best interests "*significantly* differ." *In re White*, 303 Mich App 701, 715-716; 846 NW2d 61 (2014).

In determining a child's best interests, the trial court may consider the child's bond to the parent; the parent's parenting ability; the child's need for permanency, stability, and finality; and the advantages of a foster home over the parent's home. *In re Olive/Metts*, 297 Mich App at 41-42. The trial court may also consider a parent's history of domestic violence, the parent's compliance with her treatment plan, the parent's visitation history with the children, the children's well-being while in care, and the possibility of adoption. *In re White*, 303 Mich App at 714. Further, the trial court may consider a parent's inability or unwillingness to participate in counseling, *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2001), inappropriate parenting techniques during parenting time, *In re Jones*, 286 Mich App at 131, whether the parent could provide a stable home, and the history of mental health, *In re Moss*, 301 Mich App at 90. The trial court must find by a preponderance of the evidence that termination was in the children's best interests. *Id.*

The evidence indicated that respondent had poor parenting abilities. She had also moved back in with her father, despite the history of domestic violence. Respondent refused multiple offers to help her obtain appropriate, affordable, independent housing. Her employment was not sufficient to support a family of five. She refused to participate in multiple services, and she did not benefit from the services in which she did participate. Most notably, respondent did not benefit from services designed to assist her with her severe mental health needs. In contrast, the children were thriving in their foster homes and were attending school consistently. Some of the children opined that they did not want to return to respondent's care and, although respondent suggested her sister as a caregiver, some of the children had expressed that they opposed it. Notably, the children's best interests did not significantly differ. Respondent's poor mental health, lack of benefit from services, low income, poor parenting techniques, and inappropriate housing affected them all equally. Discussing their best interests separately would have been redundant, and thus, it was not necessary. *In re White*, 303 Mich App at 715-716. On this record, we are not "left with a definite and firm conviction that a mistake has been made," *In re HRC*, 286 Mich App at 459, in the trial court's finding that termination of respondent's parental rights was in the best interests of the children.

## C. ADEQUATE SERVICES

Respondent next argues that the trial court failed to provide adequate services to assist her with reunification. This argument is without merit.

To preserve an issue regarding reasonable efforts to reunify, a respondent must "object or indicate that the services provided to them were somehow inadequate." *In re Frey*, 297 Mich App at 247. In this case, there is no indication that respondent objected to the reasonableness or adequacy of the services in the trial court. Therefore, the issue is unpreserved for appeal. We

review unpreserved claims for plain error affecting a respondent's substantial rights. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008).

"Reasonable efforts to reunify the child and family must be made in all cases" except under certain circumstances not present in this case. MCL 712A.19a(2). "If reunification is the permanency planning goal, the court must consider whether efforts by the supervising agency to reunify a family are reasonable." *In re Rood*, 483 Mich 73, 98; 763 NW2d 587 (2009) (cleaned up). Although the DHHS "has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App at 248. "Not only must respondent cooperate and participate in the services, she must benefit from them." *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014).

Respondent was provided with a treatment plan that required her to participate in mental health services, parenting classes, and individual therapy, as well as to obtain adequate employment and appropriate housing. To address her mental health issues, respondent was provided with a psychological evaluation, individual therapy, and a psychiatrist. Respondent's participation in therapy was sporadic, and the therapist stated that respondent did not benefit from therapy. The psychiatrist similarly stated that respondent did not benefit from that service because she refused to take her medication. Respondent claimed that she did not have mental health issues and did not need medication.

With regard to housing, the caseworker and the parenting partner both offered to help respondent gain Section 8 housing, but respondent claimed that housing was not an issue, and she refused the help that was offered to her. Respondent was also provided with supervised parenting time but it was suspended after she made inappropriate statements to the children that caused them distress. Respondent did participate with a parenting partner, but even after doing so, she still did not take responsibility for why the children were removed from her care.

Respondent was provided with many services, including multiple services to address her most severe issue—mental health—but she either refused to participate in the services or she did not benefit from the services in which she did participate. Respondent suggests that she should have been given additional specialized services or assistance in securing services. It is not clear what additional help respondent is suggesting she should have been given. In our decision in the case *In re Hicks*, 315 Mich App 251, 282-283; 890 NW2d 696 (2016), we provided guidance regarding what the DHHS must do when faced with a parent with a known or suspected intellectual, cognitive, or developmental impairment. But respondent has not identified an intellectual, cognitive, or developmental impairment. Although respondent experienced mental-health issues, she was connected with the appropriate service providers; there is no indication that she would have benefited from additional services that she did not receive. Thus, we conclude that respondent did not demonstrate plain error in this regard.

### D. ASSUMPTION OF JURISDICTION

Finally, respondent argues that the trial court clearly erred in assuming jurisdiction over the children. We conclude that the trial court properly exercised jurisdiction over the children.

To exercise jurisdiction, the trial court must find that a statutory basis for jurisdiction exists. *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). Jurisdiction must be established by a preponderance of the evidence. *Id*. We review the trial court's decision to exercise jurisdiction "for clear error in light of the court's findings of fact." *Id*.

MCL 712A.2 governs jurisdiction in child-neglect proceedings. That statute states in relevant part:

> The court has the following authority and jurisdiction:
>
> * * *
>
> (b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:
>
> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship.
>
> * * *
>
> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in.

In assuming jurisdiction in this case, the trial court summarized all of the testimony presented at the adjudication trial, including the testimony concerning the children's truancy and poor hygiene, as well as respondent's history of domestic violence. Allowing the children to miss an approximate average of 90 days of school qualified as a failure to provide for their education needs. Further, the failure to provide for the children's hygiene qualified as neglect of their health and generally created an unfit place for them to live because of neglect. Finally, the fact that respondent and the children were living in a home with a person who was violent toward her qualified as providing an unfit place for the children to live. Thus, we are not "left with a definite and firm conviction that a mistake has been made," *In re HRC*, 286 Mich App at 459, in the trial court assuming jurisdiction over the children.

Affirmed.

/s/ Michael J. Kelly
/s/ Karen M. Fort Hood
/s/ Brock A. Swartzle

-6-